[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
SUPPLEMENTAL MEMORANDUM OF DECISION
On December 10, 1996, after jury selection, but prior to the jury being sworn, the defendant moved to dismiss the action against him under Sec. 735A of the Practice Book. The court heard the motion and entered a decision from the bench. It now believes that that decision should be supplemented and shall proceed to do so. Where the decisions appear contradictory, if indeed they are, this memorandum shall control.
According to the defendant, the state has ignored its disclosure requirements as provided by Practice Book rule, statute, and constitutional mandate by withholding exculpatory material until after the defendant's trial has started. (sic) This complete abrogation of the defendant's fundamental rights by the state has illegally deprived the defendant of any meaningful use of this now disclosed exculpatory material. The withholding of this material has also deprived the defendant of his liberty, his right to reasonable bail prior to trial, and a meaningful pretrial conference in order to justly resolve the matter short of trial.
He continues by reciting that on January 24, 1996, the attorney and the assistant state's attorney assigned to the case pretried it before the court. Counsel for the defendant represented that the defense was going to be self-defense and CT Page 7140 that the defendant had been attacked by members of a gang. The assistant state's attorney indicated that he had no evidence that there was any gang involvement in this matter, and the court thereafter made its recommendation regarding the disposition. On or about February 28, 1996, the defendant filed pretrial motions. They included a request for disclosure requesting "`1. Exculpatory information or materials . . .' and `exculpatory material in accordance with Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1970). . . .'" The defendant also filed a request for the disclosure of the names of witnesses and statements of witnesses pursuant to Sec. 743 of the Practice Book, and a request for "gang" information relating to this matter.
The defendant's motions were heard on March 19, 1996, at which time the assistant state's attorney indicated that there was to be an "open file" for discover, v purposes. The defense counsel was free to review the state's attorney's file. The assistant state's attorney objected to the disclosure of "gang" information and claimed that there was no evidence of any involvement by any such entity. Thereafter, the court denied the defendant's request for such information.
Jury selection began on December 3, 1996, and was completed on December 4. On Friday, December 6, 1996, counsel for the defense received by FAX transmission from the state a statement made by Duwayne Brown dated October 12, 1994, (emphasis supplied) which relates to an attack of the members of the "Brotherhood" street gang just prior to the shooting by the defendant. On December 9, 1996, counsel for the defense received another statement regarding the attack of eight "Brotherhood" members. Neither of these statements were in the state's "open file."
The defendant concludes by saying that the state has completely disregarded their (sic) "responsibility to disclose exculpatory material and violated the specific provisions of [Sec. 743 of the Practice Book] all to the defendant's great detriment. To now assume that the defendant can make adequate use of these statements is preposterous. To disclose two old exculpatory statements such as these after the trial has begun [sic] is outrageous enough to warrant dismissal." The factual predicate as set forth in the defendant's motion for purposes of this motion to dismiss is not controverted.
"If a party fails to comply with disclosure as required under CT Page 7141 these rules, the opposing party may move the judicial authority for an appropriate order. The judicial authority hearing such a motion MAY enter such orders and time limitations as it deems appropriate, including, without limitation, one or more of the following . . .'" (Emphasis supplied.) Section 735A of the Practice Book. Thereafter, the cited section recites eight potential orders the court may issue in such circumstance. One of the alternatives available to the court is the sanction sought by the defense, that is, the dismissal of the charges. However, is a dismissal mandated, necessary or indeed even appropriate under the factual predicate existing in this case?
Perhaps to draw a clear perspective in addressing this problem, consideration of situations where evidence is destroyed, unpreserved or deliberately withheld can be of assistance. Under the federal constitution, a criminal defendant's due process rights may be violated by the state's failure to provide the defendant with evidence within its control in two situations. The first is the withholding of exculpatory evidence from the accused. The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is materially used as to guilt or punishment irrespective of the good faith or bad faith of the government.Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963); State v. Walker, 214 Conn. 122, 126; State v. Cohane,193 Conn. 474, 495, 479 A.2d 763, cert. denied, 469 U.S. 990,105 S.Ct. 397, 83 L.Ed.2d 331 (1984). The second is the failure of the police to preserve evidence that might be useful to the accused.
"`The Due Process Clause of the Fourteenth Amendment, as interpreted in Brady, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. [U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.' Arizona v.Youngblood, 488 U.S. 51, 557-58, 109 S.Ct. 333, 102 L.Ed.2d 281
(1988) reh. denied, 488 U.S. 1051, 109 S.Ct. 885,102 L.Ed.2d 1007 (1989)." State v. Conn, 234 Conn. 95, 106-07. CT Page 7142
"Prior to the decision of the United States Supreme Court in Youngblood, [our courts] consistently had applied a balancing test in determining whether the failure of the police to preserve potentially useful evidence had deprived a criminal defendant of due process of law. . . ." State v. Morales, 232 Conn. 707, 719
(1995). Our courts, in relying upon "decisions of federal courts interpreting the federal constitution's due process clause,[14]
had required a trial court, in determining whether the defendant had been deprived of his rights under either the federal or state constitutions, to weigh several factors. These factors included `the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its nonavailability to the defense and the prejudice to the defendant caused by the unavailability of the evidence.'"State v. Morales, supra, 719-20, quoting State v. Asherman,193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050,105 S.Ct. 1749, 84 L.Ed.2d 814 (1985). That test bears the name of that defendant, the Asherman test.
Our court, again, has frequently rejected a litmus test that consisted of only one factor and, instead, has required courts to employ a balancing test, when ruling on issues that concern due processes or fundamental fairness. State v. Morales, supra,232 Conn. 719-20. Since cases dealing with withholding evidence, loss of evidence or destruction of evidence require the application of the Asherman test, logic dictates that the late delivery of evidence certainly requires no more. No evidence was offered on "the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its nonavailability to the defense and the prejudice to the defendant caused by the unavailability of the evidence."State v. Asherman, supra.
In this case, in retrospect, counsel offered evidence of gang involvement and was able to utilize the information set forth in the two late arriving statements. The court is also constrained to note that there was no testimony, much less evidence of any prejudice except an arguable prejudice to the defendant, introduced in support of the motion to dismiss. Language in the motion and the arguments such as ". . . the defendant's great detriment. . . . preposterous . . . and outrageous. . . ." while forceful of presentation, is not evidence nor a substitute for evidence of prejudice to the defendant and this court is powerless to predicate a finding thereon. CT Page 7143
Section 735A of the Practice Book, among its authorized orders, sets forth an order granting the moving party additional time or a continuance. This the court was willing to do and clearly said so. Although the defendant refused to accept such an order and elected to proceed albeit under a reservation of rights, that refusal and that reservation did not establish prejudice and/or just how the defendant has been deprived of his pretrial liberty, his right to reasonable bail prior to trial, or a meaningful pretrial conference. The opportunity for a continuance to prepare a defense based upon the late arriving statements was an accepted and appropriate remedy. Failure to utilize that opportunity hardly strengthens his hypothesis for a dismissal.
In accordance with the foregoing supplemental memorandum of decision together with the original memorandum, the motion to dismiss is denied.
Moraghan, J.